ORIGINAL

1 | DESAI LAW FIRM, P.C.
Aashish Y. Desai, Esq. (SBN 187394)
2 | Adrianne De Castro, Esq. (SBN 238930)
3200 Bristol St., Suite 650
3 | Costa Mesa, CA 92626
Telephone: (949) 614-5830
4 | Facsimile:  (949) 271-4190
aashish@desai-law.com
5 | adrianne@desai-law.com

6 | *Attorneys for Plaintiffs*

7 | SANFORD HEISLER, LLP
Ross B. Brooks (N.Y. Bar No. 922122)
8 | Inayat Hemani (N.Y. Bar No. 031862012)
1350 Avenue of the Americas, 31st Floor
9 | New York, NY 10019
Tel.: (646) 402-5650
10 | Fax: (646) 402-5651

11 | *Attorneys for Plaintiffs*

12 | *Additional Counsel on Signature page*

14 AUG 26  PM 3: 28

SEALED

13

14 |                 **UNITED STATES DISTRICT COURT**

15 |               **SOUTHERN DISTRICT OF CALIFORNIA**

16

17 | UNITED STATES OF AMERICA,              ) CIVIL ACTION NO. **14 CV 1919 LAB -JLB**

18 | *EX REL.* [UNDER SEAL],                )

19 |                                         )
        Plaintiffs,                         ) **COMPLAINT**
20 |                                         )

21 | v.                                      )

22 | [UNDER SEAL],                          ) **FILED UNDER SEAL**
                                            ) **PURSUANT TO**
23 |        Defendant.                       ) **31 U.S.C. § 3730(b)(2)**

24 |                                         )

25 |                                         ) JURY TRIAL DEMANDED

26 |                                         )

27 |                                         )

28

1

1    DESAI LAW FIRM, P.C.
     Aashish Y. Desai, Esq. (SBN 187394)
2    Adrianne De Castro, Esq. (SBN 238930)
     3200 Bristol St., Suite 650
3    Costa Mesa, CA 92626
     Telephone:  (949) 614-5830
4    Facsimile:   (949) 271-4190
     aashish@desai-law.com
5    adrianne@desai-law.com

6    *Attorneys for Plaintiffs*

7    SANFORD HEISLER, LLP
     Ross B. Brooks (N.Y. Bar No. 922122)
8    Inayat Hemani (N.Y. Bar No. 031862012)
     1350 Avenue of the Americas, 31st Floor
9    New York, NY 10019
     Tel.: (646) 402-5650
10   Fax: (646) 402-5651

11   *Attorneys for Plaintiffs*

12   *Additional Counsel on Signature page*

13

14         **UNITED STATES DISTRICT COURT**

15         **SOUTHERN DISTRICT OF CALIFORNIA**

16

17   UNITED STATES OF AMERICA; and     )    CIVIL ACTION NO.

18   THE STATES OF CALIFORNIA,        )
     COLORADO, CONNECTICUT,       )    **COMPLAINT** FOR VIOLATIONS OF
19   DELAWARE, FLORIDA, GEORGIA,   )    **FEDERAL FALSE CLAIMS ACT, 31**
     HAWAII, ILLINOIS, INDIANA, IOWA, )    **U.S.C. § 3729,** *ET SEQ;*
20   LOUISIANA, MARYLAND,         )    **CALIFORNIA FALSE CLAIMS ACT**
     MASSACHUSETTS, MICHIGAN,     )    **[CAL. GOVT. CODE § 12650** *ET*
21   MINNESOTA, MONTANA, NEVADA,   )    *SEQ.***]; COLORADO MEDICAID**
     NEW HAMPSHIRE, NEW JERSEY,    )    **FALSE CLAIMS ACT [COLO. REV.**
22   NEW MEXICO, NEW YORK, NORTH   )    **STAT. § 25.5-4-303** *ET SEQ.***];**
     CAROLINA, OKLAHOMA, RHODE    )    **CONNECTICUT FALSE CLAIMS**
23   ISLAND, TENNESSEE, TEXAS,       )    **ACT FOR MEDICAL ASSISTANCE**
     VIRGINIA, WASHINGTON,        )    **PROGRAMS [CONN. GEN. STAT.**
24   WISCONSIN, and THE DISTRICT OF )    **§ 17B-301A** *ET SEQ.***]; DELAWARE**
     COLUMBIA,                   )    **FALSE CLAIMS AND FALSE**
25                         )    **REPORTING ACT [6 DEL. C.**
     *ex rel.* MONIQUE GIPSON,       )    **§ 1201]; FLORIDA FALSE CLAIMS**
26                         )    **ACT [FLA. STAT. ANN. § 68.081** *ET*
         Plaintiffs,           )    *SEQ.***]; GEORGIA FALSE**
27                         )    **MEDICAID CLAIMS ACT [GA.**
     v.                         )
28

PATHWAY GENOMICS
CORPORATION,

       Defendant.

CODE ANN. § 49-4-168 *ET SEQ.*];
HAWAII FALSE CLAIMS ACT
[HAW. REV. STAT. § 661-21 *ET
SEQ.*]; ILLINOIS WHISTLEBLOWER
REWARD AND PROTECTION ACT [740
ILL. COMP. STAT. § 175 *ET SEQ.*];
IOWA FALSE CLAIMS ACT [IOWA
CODE § 685.1 *ET SEQ.*; INDIANA FALSE
CLAIMS AND WHISTLEBLOWER
PROTECTION ACT [IND. CODE
ANN. § 5-11-5.5-1 *ET SEQ.*];
LOUISIANA MEDICAL
ASSISTANCE PROGRAM
INTEGRITY LAW [LA. REV. STAT.
§ 46:437.1 *ET SEQ.*]; MARYLAND
FALSE HEALTH CLAIMS ACT [MD
CODE ANN. § 2-601 *ET SEQ.*];
MASSACHUSETTS FALSE CLAIMS
LAW [MASS GEN LAWS CH.12 § 5
*ET SEQ.*]; MICHIGAN MEDICAID
FALSE CLAIMS ACT [MICH.
COMP. LAWS. § 400.601 *ET SEQ.*];
MINNESOTA FALSE CLAIMS ACT
[MINN. STAT. § 15C.01 *ET SEQ.*];
MONTANA FALSE CLAIMS ACT
[MONT. CODE ANN. § 17-8-401 *ET
SEQ.*]; NEVADA FALSE CLAIMS
ACT [NEV. REV. STAT. ANN.
§ 357.010 *ET SEQ.*]; NEW HAMPSHIRE
FALSE CLAIMS ACT [N.H. REV.
STAT. ANN. § 167:61-B ET SEQ. ];
NEW JERSEY FALSE CLAIMS ACT,
N.J. STAT. § 2A:32C-1, *ET SEQ.*; NEW
MEXICO MEDICAID FALSE CLAIMS
ACT [N.M. STAT ANN. § 27-2F-1 *ET
SEQ.*]; NEW YORK FALSE CLAIMS
ACT [N.Y. STATE FIN. § 187 *ET
SEQ.*]; NORTH CAROLINA FALSE
CLAIMS ACT [N.C.G.S. § 1-605 *ET
SEQ.*]; OKLAHOMA MEDICAID
FALSE CLAIMS ACT [OKLA. STAT.
TIT. 63 § 5053 *ET SEQ.*]; RHODE
ISLAND FALSE CLAIMS ACT [R.I.
GEN. LAWS. § 9-1.1-1 *ET SEQ.*];
TENNESSEE FALSE CLAIMS ACT
AND TENNESSEE MEDICAID
FALSE CLAIMS ACT [TENN. CODE
ANN. § 4-18-101 *ET SEQ.* AND § 71-5-

181 *ET SEQ.*]; TEXAS MEDICAID
FRAUD PREVENTION LAW [TEX.
HUM. RES. CODE ANN. § 36.001 *ET
SEQ.*]; VIRGINIA FRAUD AGAINST
TAXPAYERS ACT [VA. CODE ANN.
§ 8.01-216.1 *ET SEQ.*];
WASHINGTON STATE MEDICAID
FRAUD FALSE CLAIMS ACT [RCW
§ 74.66.005 *ET SEQ.*]; WISCONSIN
FALSE CLAIMS FOR MEDICAL
ASSISTANCE ACT [WIS. STAT
§ 20.931 *ET SEQ.*]; AND DISTRICT
OF COLUMBIA PROCUREMENT
REFORM AMENDMENT ACT [D.C.
CODE ANN. § 1-1188.13 *ET SEQ.*]

**FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)(2)**

JURY TRIAL DEMANDED

## I.  INTRODUCTION

1.    This is a *qui tam* action by Plaintiff-Relator Monique Gipson ("Relator"), for herself and on behalf of the United States and on behalf of the sovereign states of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, Washington, Wisconsin, and the District of Columbia (collectively, "Plaintiff States"), to recover damages and civil penalties arising from Defendant's actions in violating the Federal False Claims Act, 31 U.S.C. § 3729 *et seq* (the "FCA"), and the relevant provisions of the false claims acts of the Plaintiff States.

2.    Defendant Pathway Genomics Corporation offered referring physicians and medical groups, including Cardiology Consultants of Santa Monica and Peppertree Multispecialty Medical Group remuneration in the form of a "reimbursement program" intended to induce or reward referrals for genetic testing in violation of the Anti-Kickback Statute.   In addition, Defendant offered free medical supplies to physicians.

3.    As a result of such improper remuneration, Defendant submitted or caused to be submitted numerous false or fraudulent claims for payment to government healthcare programs based on prohibited referrals.

4.    Additionally, Defendant engaged in a "double-billing" scheme in which both medical clinics and laboratories billed government health programs for specimen collection.

5.    Defendant has also provided tests to customers without any determination of whether the tests were medically reasonable and necessary based upon the patient's condition.  Defendant's genetic tests are also not accepted as

based upon sound science by the Food and Drug Administration or the Federal Trade Commission.

6.     As a result of Defendant's billing practices, government healthcare programs approved, paid, and continue to approve and pay claims under Medicare and Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct of Defendant.

## II.     PARTIES

7.     **Relator Monique Gipson** is a citizen of the United States and a resident of California.  She worked as a Sales Representative at Pathway Genomics Corporation between May 2013 and September 6, 2013.  As a Sales Representative, Relator has direct and personal knowledge of the allegations described herein.

8.     **Pathway Genomics Corporation** ("Pathway Genomics" or "Pathway" or "Defendant") is a privately held personal genomics company headquartered in San Diego, California.  The company sells, analyzes, and provides analysis of genetic testing kits for a variety of purposes within the field of clinical genomics, including efficacy and side effects of certain medications, genetic risk for certain conditions, and carrier status for recessive genetic diseases.  These tests are performed by administering a saliva sample in a medical office and sending it to Pathway Genomics' in-house laboratory for analysis.

## III.     JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action under both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought under the False Claims Act, 31 U.S.C. §§ 3729 and 3730 and parallel provisions of the State False Claims Acts. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

10.     This Court has personal jurisdiction over Pathway Genomics pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendant has at least minimum contacts with the United States.  Moreover, Defendant can be found in and transacts – or has transacted – business in the Southern District of California.

11.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Defendant can be found in and transacts — or has transacted — significant business in the Southern District of California, and many of the acts forming the basis of this action occurred within the District..

12.     In conformity with 31 U.S.C. § 3730(b)(2), Relator Monique Gipson has served a written disclosure of all material evidence and information in her possession on the United States Attorney General and the United States Attorney for this District. This written disclosure will be supported by material evidence known to Relator at the time of filing this Complaint establishing the existence of Defendant's fraudulent conduct, which resulted in economic loss to the government.  Because the information includes attorney-client communications and work product of Relator's attorneys, and will be submitted to those Federal and State officials in their capacity as potential co-counsel in the litigation, Relator understands his disclosures to be confidential and exempt from disclosure under the Freedom of Information Act.  5 U.S.C. § 552; 31 U.S.C. § 3729(c).

13.     There has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint.  *See* 31 U.S.C. § 3730(e)(4).  Assuming there had been such a disclosure, Relator Monique Gipson is an "original source" under the FCA and parallel provisions of the State False Claims Acts.  *Id.*

## IV.     LEGAL AND REGULATORY FRAMEWORK

### A.     The False Claims Act

14.     The False Claims Act ("FCA") was originally enacted in 1863 and was

substantially amended in 1986 by the False Claims Amendments Act, Pub. L. 99-562, 100 Stat. 3153. Congress enacted the 1986 amendments to enhance and modernize the United States Government's tools for recovering losses sustained from the perpetuation of fraud against the American taxpayer. The amendments were intended to create incentives for people with knowledge of frauds against the Government to disclose the information without fear of reprisals or Government inaction and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf. The FCA was further amended in May 2009 by the Fraud Enforcement and Recovery Act of 2009 ("FERA") and again in March 2010 by the Patient Protection and Affordable Care Act ("PPACA"). Both FERA and PPACA made a number of procedural and substantive changes to the FCA in an attempt to ease the government and private Relators' burdens in investigating and prosecuting *qui tam* suits under the FCA.

15. The FCA allows any person having information about false or fraudulent claims to bring an action for herself and the Government, and to share in any recovery. The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on Pathway Genomics during that time) to enable the Government to (a) conduct its own investigation without Pathway Genomics' knowledge and (b) determine whether to join the action.

16. Additionally, several states and municipalities allow a person having information about false or fraudulent claims to bring an action on behalf of himself or herself and the state and/or municipality, including the certain sovereign states and localities on whose behalf, along with that of the United States, Relator brings this action.

**B. The Anti-Kickback Statute**

17. The Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b)(2)(A) and (B), imposes criminal penalties on anyone who knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or

indirectly, overtly or covertly, in cash or in kind, to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a federal health care program, or to purchase or order, or arrange for or recommend purchasing or ordering, any good, service or item for which payment may be made in whole or in part under a Federal health care program. The AKS holds liable both the person paying and the person accepting a kickback. Unlawful remuneration includes any payment or other benefit made directly or indirectly, overtly or covertly, in cash or in kind, for referrals, subject to specific exclusions. 42 U.S.C. § 1395nn(h)(1)(B); 42 C.F.R. § 411.351.

18.    Compliance with the Anti-Kickback Statute is a condition of payment by Federal healthcare programs, including Medicare, and a claim for reimbursement from such programs for items or services furnished or arranged in return for a kickback is a false claim under the FCA. *See* 42 U.S.C. § 1320(a)-7b(g); *United States v. Omnicare, Inc.*, No. 07-cv-05777, 2013 U.S. Dist. LEXIS 102543, *27 (N.D. Ill. July 23, 2013).

19.    A 2010 clarifying amendment of the AKS provides that "a claim [to a Federal health-care program] that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of" the False Claims Act. Patient Protection and Affordable Care Act, Pub. L. 111–148, § 6402, 124 Stat. 468, 759 (2010), codified at 42 U.S.C. § 1320a-7b(g).

20.    If even one purpose of remuneration is to induce referrals for covered items or services, such payment of remuneration violates the AKS. In such circumstances, claims for Federal reimbursement arising from the referrals violate the FCA, even if other, legitimate purposes may be present.

21.    On June 6, 2005, the Office of the Inspector General of the Department of Health and Human Services issued an advisory opinion relevant to the AKS and parallel allegations to this complaint. The opinion evaluated the

potential liability regarding a laboratory's proposal to provide blood collection supplies at no cost to physicians and to pay those physicians for collecting samples. The OIG concluded that the aforementioned arrangement posed "a substantial risk of program fraud and abuse" and could "potentially generate prohibited remuneration under the anti-kickback statute." The OIG assessed the applicability of 42 C.F.R. § 1001.952(d), the safe harbor for personal services and management contracts, and concluded that the provision was not relevant to the arrangement.

## V.   GOVERNMENT HEALTHCARE PROGRAMS

### A.   The Medicare Program

22.    In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., known as the Medicare program. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. 42 U.S.C. §§ 426, 426A. Medicare is administered by CMS, which is part of the Department of Health and Human Services. The Medicare program reimburses hospitals and medical providers for certain costs for healthcare and services provided to program participants.

23.    For inpatient treatment, reimbursement to treating facilities (such as hospitals) is governed by Medicare Part A, 42 U.S.C. §§ 1395c-1395i-5. For outpatient treatment, reimbursement to health care providers (such as physicians) is governed by Medicare Part B, 42 U.S.C. §§ 1395j-1395w-5.

24.    Medicare has extremely limited coverage provisions for genetic testing. A 2012 OIG report indicated that CMS does not pay for preventive screening tests except for those specifically authorized by statute, and because it considers predictive tests to be screening tests, genetic tests ordered for the purpose of predicting medical conditions are not covered by Medicare. *See* Memorandum Report from Stuart Wright, Deputy Inspector Gen. for Evaluation & Inspections, Dept. of Health & Human Servs. to Marilyn Tavenner, Acting Adm'r, Ctrs. for

Medicare & Medicaid Servs. 2 (June 12, 2012) [hereinafter OIG Report].  Medicare can, however, cover genetic tests when they are used to "diagnose or determine treatment in the presence of signs and symptoms of disease." *Id.* (citing Secretary's Advisory Committee on Genetics, Health, and Society, *Coverage and Reimbursement of Genetic Tests and Services*, Feb. 2006, p. 30).  An example given by the OIG of a common use of genetic tests covered by Medicare would be to assist in deciding upon proper cancer treatments.  *Id.*

25.    For example, the tests can be used to predict "optimal chemotherapy regimens and avoid exposing patients to ineffective or overly toxic regimens." *Id.* (citing National Human Genome Research Institute, National Institutes of Health, http://www.genome.gov (accessed Jan. 25, 2012)).  This assumes that the patient has already been diagnosed with cancer and is therefore already showing "signs and symptoms."  With regards to coverage decisions, Medicare relies on a combination of national and local coverage determinations.

26.    National coverage determinations (NCDs) are created at the federal level and apply across the entire Medicare landscape, while local coverage determinations (LCDs) apply to contractors in a given jurisdiction.  *Id.*  Only two NCDs address genetic testing: (1) testing to predict a patient's responsiveness to warfarin sodium, and (2) cytogenetic studies.  *Id.*  According to OIG, [o]f the nearly 9,000 LCDs, only eleven are related to genetic tests."  *Id.*

**B.    The Medicaid Program**

27.    Medicaid is a federal and state funded health program, benefiting "categorically eligible" people, who are mostly low-income individuals and families.  Like Medicare, it was created in 1965 pursuant to Title XIX of the Social Security Act.   Under Medicaid, participating states administer state Medicaid programs that subsidize health care coverage for eligible residents.  The individual

state programs reimburse medical providers and hospitals for services rendered to program participants. The states receive federal funds to pay for Medicaid services.

28.     Each state's Medicaid program must cover hospital services, 42 U.S.C. § 1396(a)(10(A), 42 U.S.C. § 1396d(a)(1-)(2), and uses a cost reporting method similar to that used under Medicare.

29.     Each physician who participates in the Medicaid program must sign a Medicaid provider agreement with his or her state. Although there are variations in the agreements among the states, all states require the prospective Medicaid provider to agree that he or she will comply with all Medicaid requirements, including the fraud and abuse provisions.

30.     Similar to Medicare coverage requirements, medical services must be reasonable and medically necessary in order to be subsidized by Medicaid. Claims for reimbursement presented by a provider to a state Medicaid program are subject to terms of certification. These terms require that the medical services for which the claims are sought were provided in accordance with applicable federal and state laws.

## C.     Other Government-Funded Health Programs

31.     In addition to Medicare, the federal government reimburses a portion of the cost of medical services under several other federal health care programs, including, without limitation, programs administered by the Department of Defense (the "DOD"), the Department of Veteran's Affairs (the "VA") and the Office of Personnel Management (the "OPM").

32.     The DOD administers TRICARE (formerly CHAMPUS), a health care program covering individuals and dependents affiliated with the armed forces. The VA administers its own health program, along with CHAMPVA (a shared cost program), covering families of veterans. OPM administers the Federal Employee Health Benefit Program, a health insurance program covering federal employees, retirees, and survivors.

## VI.   DEFENDANT'S UNLAWFUL CONDUCT

### A.   Defendant Paid Physicians For Referrals

33.   Pathway offers a variety of genetic tests that screen for a number of medical conditions.  For example, Pathway offers a test called "Healthy Weight DNA Insight" which, according to the company, illuminates "a unique combination of nutrigenetic, medication and general health information that enables physicians to make patient-specific recommendations on issues in order to help achieve or maintain a healthy weight."

34.   This test allegedly can indicate, among other things, (1) whether a patient has a propensity towards snacking, diabetes, decreased HDL cholesterol or decreased levels of vitamin B12; (2) whether the patient will respond to endurance training, mono-unsaturated fats, and drugs like Warfarin; and (3) whether certain diets are genetically more fitting for certain patients.  *See* Pathway Genomics, *Healthy Weight DNA Insight*, https://www.pathway.com/dna-reports/healthy-weight-dna-insight (last visited July 30, 2014).  Pathway also offers tests that indicate whether a patient carries certain genes that could become problematic for future offspring, *see* Pathway Genomics, *Carrier Status DNA Insight*, https://www.pathway.com/dna-reports/carrier-status-dna-insight (last visited July 30, 2014), and tests that indicate whether a patient will respond to certain psychiatric medications, *see* Pathway Genomics, *Mental Health DNA Insight*, https://www.pathway.com/dna-reports/mental-health-dna-insight (last visited July 30, 2014).  Pathway had previously pursued a strategy of marketing its test in pharmacies directly to customers where customers would purchase the testing kits for $20 and independently mail in a cheek swab sample to Pathway without the assistance of doctors or nurses.  This strategy was abandoned after the FDA and FTC expressed concern about the efficacy of the genetic tests.  Subsequently, Pathway transition to a marketing strategy that relied upon doctors.

35.   Relator Gipson worked as a sales representative for Pathway, and her duties included, but were not limited to the following:

- Promote and sell genetic tests and services to target physician practices as defined by the Sales Plan;

- Manage customer relationships in a defined geographical territory in order to strengthen the Pathway brand;

- Follow up on all marketing/sales leads as quickly as possible.  Make new calls on potential customers to stimulate interest in the company's services;

- Meet and/or exceed assigned sales volume/revenue targets;

- Design and implement account strategies at the territory level that exceed expectations in revenue retention/growth, account profitability, and customer satisfaction/loyalty;

- Develop call plans, routes, and objectives for each client.  Travel throughout assigned territory to call on regular and prospective customers to solicit orders, or talks with customers in person or by phone;

- Coordinate appropriate support resources (client services, telemarketing, technical) to maximize and strengthen customer relationships;

- Maintain sales prospect lists/sales funnels as required to achieve sales volume targets.  Maintain a detailed customer database within SalesForce CRM (Customer Relationship Management) system;

- Advise management of any information pertinent to the company's activities, gathered as a result of observations made in the field. Report information regarding new services, activities of competitors, upgrades in capabilities and referrer's needs, etc;

- Work with client service representatives to keep account activities and literature up to date;
- Investigate and resolve customer problems.  Respond to customer and patient complaints and make recommendations to management regarding good-will building;
- Manage company expenses within policy and defined budget;  Perform client presentations articulating the value proposition of product / solution / service offerings.

36.     According to Relator Gipson, as a Pathway sales representative, it was her responsibility to enroll doctors and medical offices such as Peppertree Multispecialty Group ("Peppertree") and Cardiology Consultants of Santa Monica ("Cardiology Consultants") in Pathway's Reimbursement Program.  This program is a thinly veiled means of offering remuneration to doctors for their use of the test that is both above fair market value and not set in advance but instead contingent on the number of tests given.  These and other factors put this program in violation of the AKS.  Pathway continues to offer this program.

37.     Cardiology Consultants is a medical group consisting of six cardiologists located in Santa Monica, California.  The company has previously used and continues to use Pathway genetic tests and bill the costs to government funded healthcare programs, either through Pathway or on its own, despite receiving the alleged kickbacks from Pathway.

38.     Peppertree is a multi-service medical group located in Diamond Bar, California.  The company has previously used and continues to use Pathway genetic tests and bill the costs to government funded healthcare programs, either through Pathway or on its own, despite receiving the alleged kickbacks from Pathway.

39.     As part of the Reimbursement Program, medical practitioners signed a written agreement that they would be paid twenty dollars per saliva sample collected and processed. *See* Exhibit A. Pathway sold doctors on their genetic tests by offering twenty dollars per test completed, and by giving the test kits to the doctors for free. The payments were offered for each test given, so for example, if an office performed twenty-five test kits, the office received a total of $500 ($20 x 25 test kits). Sales Representatives, including Relator Gipson, were instructed to present the $20 requisition fee as a benefit when she marketed the product to doctors. Pathway referred to the twenty dollar payments as "requisition fees" or "processing and handling fees." The twenty dollar payments were, in any case, unrelated to any further interpretations and were paid to the doctors by Pathway solely for the act of using the kit and submitting it for testing. As shown below, Defendant Pathway's internal documents appear to show that it paid as much as forty dollars per referral in some cases. Pathway indicated to its sales representatives that this was a legal, permitted practice. Relator Gipson was specifically told that TRICARE and Medicare would pay the cost of tests.

40.     After enrolling a doctor/medical office into the Reimbursement program, Pathway instructed the doctors to follow the instructions for collecting and sending the sample kit and accompanying paperwork to Pathway Genomics by Federal Express. Medical offices would later receive a lump sum with all of their requisition fees from used kits at the end of each month.

41.     Relator Gipson would enroll doctors into Pathway's Reimbursement Program by visiting their offices to market the various genetic tests offered by Pathway. According to Gipson, she was expected to explain to doctors the importance of testing all of their patients. Pathway told Relator that all of the tests were covered by government run insurance programs, and that this was one of the tests' major selling points. During most of Relator's time at Pathway, sales representatives were told to push the claims through regardless of patient histories

16

and that all patients could have the tests and that the tests would be covered. Pathway would handle all of the billing on behalf of the doctors and find a way to get the tests covered.

42.   In mid to late 2013, sales representatives were told to try to get patient histories to see if the patient had some basis for needing a test such as trying to conceive, having a family tendency toward strokes, or being overweight.   All established medical necessity and patient records were to be sent to Pathway through the sales representative.   Pathway did not start seeking such medical necessity information until approximately August or September of 2013, just as Relator Gipson was leaving the company.   For the vast majority of Relator Gipson's time with Pathway, the company sought, and often received, insurance payment for all varieties of genetic testing regardless of medical necessity.

43.   Pathway further instructed its sales staff to explain to doctors how they could use the genetic testing kits as a means of making additional money above and beyond even the fee that Pathway paid them.   Director Todd Johnson explained to Relator and the rest of the sales force that they should sell doctors on the potential to make additional money off the testing kits by bringing patients in for additional office visits during which the doctors could interpret the various tests.   The doctors could then charge insurance companies, including government run services such as Medicare, Medicaid, and Tricare, for the each of the visits.   Mr. Johnson mentioned this to the sales force on at least three separate occasions.   Because the doctors received the kits for free; received payment for using the kits from Pathway; had additional opportunities to make money off interpretive appointments; and Pathway handled all of the billing, the doctors had significant motivation for using the testing kits outside of their limited medical utility.   In Relator's experience as a sales representative, she had multiple sales calls per month with Mr. Johnson.

44.   The AKS is violated if one purpose of an arrangement is to induce referrals, even if other, legitimate purposes are also present.   Considering the above,

it is clear that at least one purpose of the Reimbursement program was to induce referrals/usage of Pathway testing kits, especially when considering that the program had been operating for an extended period of time without even considering the actual medical necessity of the tests. Even after medical necessity was considered, it was still clear that Pathway's intent in offering the "requisition fees" was to induce doctors into using Pathway products regardless of their necessity or medical efficacy.

45.     The current reimbursement for specimen collection through Medicare is three dollars. This was determined by finding the HCPS code that corresponds to routine buccal swabs or venipunctures. The correct code is 36415. In several sources, most notably the CMS website, the routine buccal swab/venipuncture corresponding to code 36415 is listed as a three dollar Medicare reimbursement. *See* R.S. Desikan et al., *An Expanded Role for Neuroimaging in the Evaluation of Memory Impairment*, Am. J. Neuroradiology, *available at* http://www.ajnr.org/content/34/11/2075.full.pdf; 2014 Clinical Diagnostic Lab. Fee Schedule, *available at* http://www.upmc.com/healthcare-professionals/physicians/Documents/lab-fee-schedule.pdf.

46.     Given that the requisition fee is significantly above the three dollar fair market value of the cheek swab test, physicians have an incentive to utilize Pathway Genomics testing kits on their patients that extends beyond medical necessity. The value above the fair market value is also indicative of Pathway's intent to induce.

47.     The AKS contains a number of exceptions, referred to as "safe harbors," which insulate conduct that might otherwise be found to violate the statute. Among others, the AKS contains safe harbors for personal services and management contracts, 42 C.F.R. § 1001.952(d). This safe harbor provision requires that the compensation be consistent with fair market value. Therefore, the

safe harbor does not apply to the sale of Pathway Genomics testing kits as the compensation far exceeds the fair market value for a buccal swab.

48.    Furthermore, the safe harbor for personal services requires that the aggregate compensation paid for the services are set in advance.  Because the physicians are paid under the Pathway Genomics Reimbursement Program on a per-patient basis, the compensation cannot be set in advance and is thus not applicable to the safe harbor.  Relator Gipson has knowledge and evidence of tests that were both tainted by the requisition fees and ultimately billed to Medicare in violation of the AKS.  Exhibit B is a report summarizing Relator Gipson's collected samples for August 2013.  Included in this report are tests submitted by Peppertree and Cardiology Consultants to be paid for by Medicare.  These are representative reports illustrative of considerably greater numbers of false claims filed against the government.

49.    Below is a chart[1] listing samples sent in to Pathway by Peppertree and Cardiology Consultants for payment by Medicare.  Peppertree and Cardiology Consultants received as much as forty dollar payments for each use of the testing kits, and upon information and belief, billed Medicare for appointments tainted by these kickbacks.  The information contained in this chart is representative of further unlawful behavior by Defendant resulting in further damage against the government.  Further evidence is within the exclusive control of Defendant and will be uncovered in discovery.

| Received Date | Payor | Accession Number | Client Name | Total Samples | Total Sample Reports | Payouts for Samples |
|---|---|---|---|---|---|---|
| 8/1/13 | Medicare | D5615009 | Cardiology Consultants of Santa Monica | 1 | 2 | $60 |

[1] This information is contained in original form in Exhibit B.

| 8/1/13 | Medicare | D5615017 | Cardiology Consultants of Santa Monica | 1 | 3 | $80 |
|--------|----------|----------|----------------------------------------|---|---|-----|
| 8/7/13 | Medicare | D5615244 | Peppertree Multispecialty Medical Group | 1 | 1 | $40 |
| 8/9/13 | Medicare | D5615320 | Peppertree Multispecialty Medical Group | 1 | 2 | $60 |
| 8/16/13 | Medicare | D5615718 | Peppertree Multispecialty Medical Group | 1 | 2 | $60 |
| 8/27/13 | Medicare | D5616078 | Peppertree Multispecialty Medical Group | 1 | 2 | $60 |
| 8/28/13 | Medicare | D5616126 | Peppertree Multispecialty Medical Group | 1 | 3 | $80 |

50.    Relator Gipson also has knowledge of further false claims tainted by AKS violations being filed against the government.  Relator Gipson went on field rides with Patrick Gomez, a fellow sales representative, in San Diego, stopping at Camp Pendleton and two other military bases with considerable numbers of TRICARE patients.

**B.    Defendant Gave Free Kits To Physicians**

51.    Defendant Pathway Genomics utilizes Sales Representatives to market their genetic testing/personalized medicine testing services to physicians and other medical professionals.  Sales Representatives regularly meet with obstetricians,

gynecologists, cardiologists, internists, family practitioners, and naturopathic doctors.

52.     In the course of these meetings, Sales Representatives visit the offices of their assigned clients and discuss Pathway's genomic tests.  In order to demonstrate how to use a collection kit, Sales Representatives would often use a sample on a doctor or other staff member.  Sales representatives were also instructed to offer a free sample for use on a patient.

53.     After their presentation and demonstration, Sales Representatives would typically leave five kits at the doctors' office free of charge.

54.     The buccal swabs contained in the kits are used to collect DNA from the cheek cells of a patient and can be utilized for a variety of genetic tests for different purposes.  They are not limited to analysis and interpretation by Pathway Genomics.

55.     Providing these free kits to doctors that can be used for a variety of tests is a violation of the Anti-Kickback Statute.  In a 1994 Fraud Alert published by the Office of the Inspector General for the Department of Health and Human Services ("HHS"), the provision of supplies and equipment is only acceptable when "such equipment is integral to, and exclusively used for, performance of the outside laboratory's work."  Publication of OIG Special Fraud Alerts, 59 Fed. Reg. 242 (Dec. 19, 1994).

### C.     Defendant Double-Billed Government Health Programs For Physicians Services

56.     Pathway has failed to comply with the Federal and State False Claims Acts by submitting fraudulent claims to Medicare and Medicaid.

57.     On Relator Gipson's Individual Detail for Reports per Sample in August 2013 ("Commission Report"), (Exhibit B), seven kits are listed as having Medicare as the "PlanType" and "Payor."  Ex. B.  Furthermore, the "Payment Type" is listed as "Insurance." *Id.*

58.     According to the Medicare Claims Processing Manual, CMS Pub. 100-04, Chap. 16, Section 60.1-60.1.4, Medicare only pays the person or entity that extracts the specimen from the patient.  Because the physician extracts the saliva sample, Medicare rules prohibit reimbursement to Pathway Genomics, which operates as a laboratory that receives and analyzes samples.  However, Pathway submitted and continues to submit such claims for reimbursement to Medicare and Medicaid, bearing the monetary, labor, and time-related costs associated with handling the billing process.

59.     In the case that the physician billed to Medicare for the specimen collection, Pathway Genomics' submission to Medicare would therefore constitute double-billing.

**D.     Volume of Pathway's Testing Program**

60.     Several times per month, Pathway sent emails to its sales representatives detailing sales for the relevant time period.  The emails often describe the volume of sales in a competitive nature, praising and focusing on those with high sales numbers.  *Id.*  The emails name the medical groups or doctors who submitted the testing kits, the type of test ordered, the payment method (insurance or invoice), and the representative who made the sale.  *Id.*  Upon information and belief, Pathway continues to send out these email snapshots as a means of motivating their sales representatives.

61.     Exhibit C to the Complaint combines the data from these email snapshots and other sales charts in Relator's possession.  The spreadsheet shows that between January and July of 2013, 1,955 samples were received by Pathway for testing and were also paid for by insurance programs including government programs such as Medicare.  The month by month sales breakdown shows a sizeable increase in monthly tests received between January and July, with January tests totaling thirty-one and July tests totaling 599.  Averaging the 1,955 sales over

seven months results in approximately 279 sales per month.  If this number is applied to a twelve month year, the yearly total of testing kits received and submitted to insurance is 3,351.  Considering the gradual and substantial monthly increase, this is a conservative estimate.  Notably, Pathway often billed these tests at rates between $1,300 and $5,000 each, elevating damages to a substantial level.

## CAUSES OF ACTION

### COUNT I:

### FEDERAL FALSE CLAIMS ACT
**Violations for Causing Submission of False Claims to the United States**
**31 USC § 3729(A)(1)(A)**

62.    Relator Monique Gipson realleges and incorporates by reference the allegations in all previous paragraphs of this Complaint.

63.    Relator seeks relief against Pathway Genomics under Section 3729(a)(1)(B) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

64.    As described above, Pathway Genomics has knowingly made, used, or caused to be made or used false records and statements material to false or fraudulent claims paid or approved by the United States in violation of 31 U.S.C. § 3729(a)(1)(B).

65.    As a result of these false claims, the United States has been damaged in a substantial amount and continues to be damaged, in an amount yet to be determined.

66.    Additionally, the United States is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Pathway Genomics and arising from its fraudulent conduct as described herein.

///

## COUNT II:

## CALIFORNIA FALSE CLAIMS ACT
### Cal. Gov't Code 12651(a)(1)-(2)

67.   Relator Monique Gipson reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

68.   This claim is for penalties and treble damages under the California False Claims Act.

69.   By virtue of the acts described above, Pathway has presented false claims for payment or approval under Medicaid and other California State-funded programs to officers or employees of the State within the meaning of Cal. Gov't Code § 12651(a)(1).  Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Cal. Gov't Code § 12651(a)(2).

70.   Under California law, the State Medicaid program may withhold payment based upon "fraud or willful misrepresentation by a provider."  Cal. Welf. & Inst. Code § 14107.11(a)(2).  Fraud is defined as intentional deception or misrepresentation made by a person with the knowledge that the deception could result in some unauthorized benefit to himself or herself or some other person.  It includes any act that constitutes fraud under applicable federal or state law."  *Id.* § 14043.1(i).  Fraud is grounds for suspension from California's Medicaid program. *Id.* § 14123.

71.   California's Medicaid provider agreement, which providers, must sign in order to participate, requires them to agree "to comply with all applicable provisions of Chapters 7 and 8 of the Welfare and Institutions Code."  Chapter 7 includes a restriction of Medi-Cal services to those medically necessary to protect life, to prevent significant disability or illness, or to alleviate severe pain.  Cal.

Welf. & Inst. Code § 14059.5.

72.     Compliance with these provisions is an essential condition for participation in Medicaid and other California health programs and for the payment of claims.   Claims submitted in violation of these provisions are not eligible for reimbursement.   When a provider submits a claim for payment, it is representing or certifying compliance with these conditions.   The California State Government would not pay claims that it knew were tainted by false or fraudulent representations of compliance.

73.     The California State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

74.     Therefore, the State of California has been damaged in an amount to be proven at trial, and is entitled to treble that amount.

75.     Additionally, the State of California is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway and arising from its fraudulent conduct as described herein.

## COUNT III:

### Defendant Violated the Colorado Medicaid False Claims Act
### Colo. Rev. Stat. § 25.5-4-303 et seq.

76.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

77.     As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Colorado, in violation of Colo. Rev. Stat. § 25.5-4-303 et seq..

78.     By virtue of the acts described above, Pathway has knowingly presented false claims for payment or approval under Medicaid and other Colorado

State-funded programs to officers or employees of the State within the meaning of Colo. Rev. Stat. § 25.5-4-303 et seq. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Colo. Rev. Stat. § 25.5-4-303 et seq..

79.     The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

80.     The Colorado State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

81.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Colorado has been, and continues to be, severely damaged.

82.     Additionally, the State of Colorado is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT IV:

### Defendant Violated the Connecticut False Claims Act for Medical Assistance Programs Conn. Gen. Stat. § 17b-301a et seq.

83.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

84.     As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Connecticut, in violation of Conn. Gen. Stat. § 17b-301a et seq..

85.     By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Connecticut State-funded programs to officers or employees of the State

within the meaning of Conn. Gen. Stat. § 17b-301a et seq..  Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Conn. Gen. Stat. § 17b-301a et seq.

86.     The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

87.     The Connecticut State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

88.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Connecticut has been, and continues to be, severely damaged.

89.     Additionally, the State of Connecticut is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

**COUNT V:**

**Defendant Violated the Delaware False Claims And Reporting Act**
**6 Del. C. § 1201**

90.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

91.     As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Delaware, in violation of 6 Del. C. § 1201.

92.     By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Delaware State-funded programs to officers or employees of the State within

the meaning of 6 Del. C. § 1201. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of 6 Del. C. § 1201.

93.    The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

94.    The Delaware State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

95.    As a result of the Defendant's actions as set forth above in this Complaint, the State of Delaware has been, and continues to be, severely damaged.

96.    Additionally, the State of Delaware is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from their fraudulent conduct as described herein.

## COUNT VI:

### Defendant Violated the Florida False Claims Act
### Fla. Stat. Ann. § 68.081 et seq.

97.    Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

98.    As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Florida, in violation of Fla. Stat. Ann. § 68.081 et seq..

99.    By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Florida State-funded programs to officers or employees of the State within the meaning of Fla. Stat. Ann. § 68.081 et seq.. Defendant also caused to be made or

used false records or statements material to the false or fraudulent claims within the meaning of Fla. Stat. Ann. § 68.081 et seq..

100.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

101.   The Florida State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

102.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Florida has been, and continues to be, severely damaged.

103.   Additionally, the State of Florida is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT VII:

**Defendant Violated the Georgia State False Medicaid Claims Act
Ga. Code Ann. § 49-4-168 et seq.**

104.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

105.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Georgia, in violation of Ga. Code Ann. § 49-4-168 et seq.

106.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Georgia State-funded programs to officers or employees of the State within the meaning of Ga. Code Ann. § 49-4-168 et seq.  Defendant also caused to be made or used false records or statements material to the false or fraudulent claims

within the meaning of Ga. Code Ann. § 49-4-168 et seq.

107.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

108.   The Georgia State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

109.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Georgia has been, and continues to be, severely damaged.

110.   Additionally, the State of Georgia is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT VIII:

### Defendant Violated the Hawaii False Claims Act
### Haw. Rev. Stat. § 661-21 et seq.

111.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

112.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Hawaii, in violation of Haw. Rev. Stat. § 661-21 et seq.

113.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Hawaii State-funded programs to officers or employees of the State within the meaning of Haw. Rev. Stat. § 661-21 et seq.  Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Haw. Rev. Stat. § 661-21 et seq.

114. The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

115. The Hawaii State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

116. As a result of the Defendant's actions as set forth above in this Complaint, the State of Hawaii has been, and continues to be, severely damaged.

117. Additionally, the State of Hawaii is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT IX:

**Defendant Violated the Illinois Whistleblower Reward And Protection Act (as amended)**
**740 Ill. Comp. Stat. § 175 et seq.**

118. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

119. As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Illinois, in violation of 740 Ill. Comp. Stat. § 175 et seq.

120. By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Illinois State-funded programs to officers or employees of the State within the meaning of 740 Ill. Comp. Stat. § 175 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of 740 Ill. Comp. Stat. § 175 et seq..

121. The claims relevant to this Count include all claims for payment for

services by Defendant that were obtained as a result of illegal kickbacks.

122.   The Illinois State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

123.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Illinois has been, and continues to be, severely damaged.

124.   Additionally, the State of Illinois is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT X:

**Defendant Violated the Indiana False Claims and Whistleblower Protection Act
Ind. Code Ann. § 5-11-5.5-1 et seq.**

125.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

126.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Indiana, in violation of Ind. Code Ann. § 5-11-5.5-1 et seq..

127.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Indiana State-funded programs to officers or employees of the State within the meaning of Ind. Code Ann. § 5-11-5.5-1 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Ind. Code Ann. § 5-11-5.5-1 et seq..

128.   The claims relevant to this Count include all claims for payment for

services by Defendant that were obtained as a result of illegal kickbacks.

129.   The Indiana State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

130.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Indiana has been, and continues to be, severely damaged.

131.   Additionally, the State of Indiana is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XI:

### Defendant Violated the Iowa False Claims Act
### Iowa Code § 685.1 et seq.

132.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

133.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Iowa, in violation of Iowa Code § 685.1 et seq..

134.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Iowa State-funded programs to officers or employees of the State within the meaning of Iowa Code § 685.1 et seq..  Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Iowa Code § 685.1 et seq..

135.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

136.   The Iowa State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

137.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Iowa has been, and continues to be, severely damaged.

138.   Additionally, the State of Iowa is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XII:

**Defendant Violated the Louisiana Medical Assistance Programs Integrity Law La. Rev. Stat. § 46:437.1 et seq.**

139.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

140.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Louisiana, in violation of La. Rev. Stat. § 46:437.1 et seq..

141.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Louisiana State-funded programs to officers or employees of the State within the meaning of La. Rev. Stat. § 46:437.1 et seq..  Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of La. Rev. Stat. § 46:437.1 et seq..

142.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

143.   The Louisiana State Government approved, paid and continues to

approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

144.    As a result of the Defendant's actions as set forth above in this Complaint, the State of Louisiana has been, and continues to be, severely damaged.

145.    Additionally, the State of Louisiana is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XIII:

### Defendant Violated the Maryland False Health Claims Act
### MD Code Ann. § 2-601 et seq.

146.    Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

147.    As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Maryland, in violation of MD Code Ann. § 2-601 et seq..

148.    By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Maryland State-funded programs to officers or employees of the State within the meaning of MD Code Ann. § 2-601 et seq..  Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of MD Code Ann. § 2-601 et seq..

149.    The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

150.    The Maryland State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay,

if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

151.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Maryland has been, and continues to be, severely damaged.

152.   Additionally, the State of Maryland is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XIV:

## Defendant Violated the Massachusetts False Claims Law
## Mass Gen Laws ch.12 § 5 et seq.

153.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

154.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Massachusetts, in violation of Mass Gen Laws ch.12 § 5 et seq..

155.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Massachusetts State-funded programs to officers or employees of the State within the meaning of Mass Gen Laws ch.12 § 5 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Mass Gen Laws ch.12 § 5 et seq..

156.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

157.   The Massachusetts State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

158.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Massachusetts has been, and continues to be, severely damaged.

159.   Additionally, the State of Massachusetts is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XV:

### Defendant Violated the Michigan Medicaid False Claim Act
### Mich. Comp. Laws. § 400.601 et seq.

160.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

161.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Michigan, in violation of Mich. Comp. Laws. § 400.601 et seq..

162.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Michigan State-funded programs to officers or employees of the State within the meaning of Mich. Comp. Laws. § 400.601 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Mich. Comp. Laws. § 400.601 et seq..

163.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

164.   The Michigan State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

165.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Michigan has been, and continues to be, severely damaged.

166.   Additionally, the State of Michigan is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XVI:

### Defendant Violated the Minnesota False Claim Act
### Minn. Stat. § 15C.01 et seq.

167.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

168.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Minnesota, in violation of Minn. Stat. § 15C.01 et seq..

169.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Minnesota State-funded programs to officers or employees of the State within the meaning of Minn. Stat. § 15C.01 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Minn. Stat. § 15C.01 et seq..

170.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

171.   The Minnesota State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

172.   As a result of the Defendant's actions as set forth above in this

Complaint, the State of Minnesota has been, and continues to be, severely damaged.

173.   Additionally, the State of Minnesota is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XVII:

### Defendant Violated the Montana False Claims Act
### Mont. Code Ann. § 17-8-401 et seq.

174.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

175.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Montana, in violation of Mont. Code Ann. § 17-8-401 et seq..

176.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Montana State-funded programs to officers or employees of the State within the meaning of Mont. Code Ann. § 17-8-401 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Mont. Code Ann. § 17-8-401 et seq..

177.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

178.   The Montana State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

179.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Montana has been, and continues to be, severely damaged.

180. Additionally, the State of Montana is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XVIII:

### Defendant Violated the Nevada False Claims Act
### Nev. Rev. Stat. Ann. § 357.010 et seq.

181. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

182. As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Nevada, in violation of Nev. Rev. Stat. Ann. § 357.010 et seq..

183. By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Nevada State-funded programs to officers or employees of the State within the meaning of Nev. Rev. Stat. Ann. § 357.010 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Nev. Rev. Stat. Ann. § 357.010 et seq..

184. The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

185. The Nevada State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

186. As a result of the Defendant's actions as set forth above in this Complaint, the State of Nevada has been, and continues to be, severely damaged.

187. Additionally, the State of Nevada is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by

Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XIX:

### Defendant Violated the New Hampshire False Claims Act
### N.H. Rev. Stat. Ann. § 167:61-b et seq.

188.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

189.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of New Hampshire, in violation of N.H. Rev. Stat. Ann. § 167:61-b et seq.

190.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other New Hampshire State-funded programs to officers or employees of the State within the meaning of N.H. Rev. Stat. Ann. § 167:61-b et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Nev. Rev. Stat. Ann. § 357.010 et seq..

191.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

192.   The New Hampshire State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

193.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Nevada has been, and continues to be, severely damaged.

194.   Additionally, the State of Nevada is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XX:

### Defendant Violated the New Jersey False Claims Act
### N.J. Stat. § 2A:32C-1, et seq.

195.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

196.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of New Jersey, in violation of N.J. Stat. § 2A:32C-1, et seq..

197.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other New Jersey State-funded programs to officers or employees of the State within the meaning of N.J. Stat. § 2A:32C-1, et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of N.J. Stat. § 2A:32C-1, et seq..

198.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

199.   The Nevada State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

200.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Nevada has been, and continues to be, severely damaged.

201.   Additionally, the State of Nevada is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT XXI:

### Defendant Violated the New Mexico Medicaid False Claims Act
### M. Stat Ann. § 27-2F-1 et seq.

202.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

203.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of New Mexico, in violation of M. Stat Ann. § 27-2F-1 et seq..

204.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other New Mexico State-funded programs to officers or employees of the State within the meaning of M. Stat Ann. § 27-2F-1 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of M. Stat Ann. § 27-2F-1 et seq..

205.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

206.   The New Mexico State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

207.   As a result of the Defendant's actions as set forth above in this Complaint, the State of New Mexico has been, and continues to be, severely damaged.

208.   Additionally, the State of New Mexico is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XXII:

### Defendant Violated the New York False Claims Act
### N.Y. State Fin. § 187 et seq.

209.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

210.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of New York, in violation of N.Y. State Fin. § 187 et seq..

211.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other New York State-funded programs to officers or employees of the State within the meaning of N.Y. State Fin. § 187 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of N.Y. State Fin. § 187 et seq..

212.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

213.   The New York State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

214.   As a result of the Defendant's actions as set forth above in this Complaint, the State of New York has been, and continues to be, severely damaged.

215.   Additionally, the State of New York is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

///

## COUNT XXIII:

## Defendant Violated the North Carolina False Claims Act
## N.C.G.S. § 1-605 et seq.

216.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

217.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of North Carolina, in violation of N.C.G.S. § 1-605 et seq..

218.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other North Carolina State-funded programs to officers or employees of the State within the meaning of N.C.G.S. § 1-605 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of N.C.G.S. § 1-605 et seq..

219.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

220.   The North Carolina State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

221.   As a result of the Defendant's actions as set forth above in this Complaint, the State of North Carolina has been, and continues to be, severely damaged.

222.   Additionally, the State of North Carolina is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

**COUNT XXIV:**

**Defendant Violated the Oklahoma Medicaid False Claims Act**
**Okla. Stat. Tit. 63 § 5053 et seq.**

223.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

224.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Oklahoma, in violation of Okla. Stat. Tit. 63 § 5053 et seq..

225.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Oklahoma State-funded programs to officers or employees of the State within the meaning of Okla. Stat. Tit. 63 § 5053 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Okla. Stat. Tit. 63 § 5053 et seq..

226.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

227.   The Oklahoma State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

228.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Oklahoma has been, and continues to be, severely damaged.

229.   Additionally, the State of Oklahoma is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

**COUNT XXV:**

**Defendant Violated the Rhode Island State False Claims Act**
**R.I. Gen. Laws. § 9-1.1-1 et seq.**

230. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

231. As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Rhode Island, in violation of R.I. Gen. Laws. § 9-1.1-1 et seq..

232. By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Rhode Island State-funded programs to officers or employees of the State within the meaning of R.I. Gen. Laws. § 9-1.1-1 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of R.I. Gen. Laws. § 9-1.1-1 et seq..

233. The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

234. The Rhode Island State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

235. As a result of the Defendant's actions as set forth above in this Complaint, the State of Rhode Island has been, and continues to be, severely damaged.

236. Additionally, the State of Rhode Island is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

**COUNT XXVI:**

**Defendant Violated the Tennessee Medicaid False Claims Act**
**Tenn. Code Ann. § 4-18-101 et seq. and § 71-5-181 et seq.**

237.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

238.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Tennessee, in violation of Tenn. Code Ann. § 4-18-101 et seq. and § 71-5-181 et seq..

239.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Tennessee State-funded programs to officers or employees of the State within the meaning of Tenn. Code Ann. § 4-18-101 et seq. and § 71-5-181 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Tenn. Code Ann. § 4-18-101 et seq. and § 71-5-181 et seq..

240.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

241.   The Tennessee State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

242.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Tennessee has been, and continues to be, severely damaged.

243.   Additionally, the State of Tennessee is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

**COUNT XXVII:**

**Defendant Violated the Texas Medicaid Fraud Prevention Law
Tex. Hum. Res. Code Ann. § 36.001 et seq.**

244.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

245.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Texas, in violation of Tex. Hum. Res. Code Ann. § 36.001 et seq.

246.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Texas State-funded programs to officers or employees of the State within the meaning of Tex. Hum. Res. Code Ann. § 36.001 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Tex. Hum. Res. Code Ann. § 36.001 et seq..

247.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

248.   The Texas State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

249.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Texas has been, and continues to be, severely damaged.

250.   Additionally, the State of Texas is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

///

**COUNT XXVIII:**

**Defendant Violated the Virginia Fraud Against Taxpayers Act
Va. Code Ann. § 8.01-216.1 et seq.**

251.  Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

252.  As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Virginia, in violation of Va. Code Ann. § 8.01-216.1 et seq.

253.  By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Virginia State-funded programs to officers or employees of the State within the meaning of Va. Code Ann. § 8.01-216.1 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Va. Code Ann. § 8.01-216.1 et seq..

254.  The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

255.  The Virginia State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

256.  As a result of the Defendant's actions as set forth above in this Complaint, the State of Virginia has been, and continues to be, severely damaged.

257.  Additionally, the State of Virginia is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

///

///

**COUNT XXIX:**

**Defendant Violated the Washington State Medicaid Fraud False Claims Act RCW § 74.66.005 et seq.**

258.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

259.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Washington, in violation of RCW § 74.66.005 et seq..

260.   By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other Washington State-funded programs to officers or employees of the State within the meaning of RCW § 74.66.005 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of RCW § 74.66.005 et seq..

261.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

262.   The Washington State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

263.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Washington has been, and continues to be, severely damaged.

264.   Additionally, the State of Washington is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XXX:

**Defendant Violated the Wisconsin False Claims for Medical Assistance Act
Wis. Stat § 20.931 et seq.**

265.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

266.   As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the State of Wisconsin, in violation of Wis. Stat § 20.931 et seq..

267.   By virtue of the acts described above, PathwayGenomics has knowingly presented false claims for payment or approval under Medicaid and other Wisconsin State-funded programs to officers or employees of the State within the meaning of Wis. Stat § 20.931 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of Wis. Stat § 20.931 et seq..

268.   The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

269.   The Wisconsin State Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

270.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Wisconsin has been, and continues to be, severely damaged.

271.   Additionally, the State of Wisconsin is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

## COUNT XXXI:

**Defendant Violated the District of Columbia Procurement Reform Amendment Act**
**D.C. Code Ann. § 1-1188.13 et seq.**

272. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

273. As a result of the foregoing conduct, the Defendant knowingly and improperly submitted false claims to the District of Columbia, in violation of D.C. Code Ann. § 1-1188.13 et seq..

274. By virtue of the acts described above, Pathway Genomics has knowingly presented false claims for payment or approval under Medicaid and other District of Columbia-funded programs to officers or employees of the District within the meaning of D.C. Code Ann. § 1-1188.13 et seq.. Defendant also caused to be made or used false records or statements material to the false or fraudulent claims within the meaning of D.C. Code Ann. § 1-1188.13 et seq..

275. The claims relevant to this Count include all claims for payment for services by Defendant that were obtained as a result of illegal kickbacks.

276. The District of Columbia Government approved, paid and continues to approve and pay claims under Medicaid that it otherwise would not approve or pay, if not for the fraudulent conduct concerning their inducement of doctor's and illegal billing practices.

277. As a result of the Defendant's actions as set forth above in this Complaint, the District of Columbia has been, and continues to be, severely damaged.

278. Additionally, the District of Columbia is entitled to the maximum penalty of $10,000 for each and every false claim presented and caused to be presented by Pathway Genomics and arising from its fraudulent conduct as described herein.

1
2

### PRAYER FOR RELIEF

3    WHEREFORE, Relator prays for judgment against Pathway Genomics as follows:

4          a.      That Pathway Genomics cease and desist from violating 31 U.S.C. §
5    3729 *et seq;*

6          b.      That this Court enter judgment against Pathway Genomics in an
7    amount equal to three times the amount of damages the United States has sustained
8    because of Defendant's actions, plus a civil penalty of not less than $5,500 and not
9    more than $11,000 for each violation of 31 U.S.C. § 3729 proven at trial, plus
10   attorney fees.

11         c.      That this Court enter judgment against Pathway Genomics in an
12   amount equal to three times the amount of damages the States have sustained
13   because of Defendant's actions, plus the maximum civil penalty of $10,000 for
14   each violation of 31 U.S.C. § 3729 proven at trial, plus attorney fees.

15
16                        ### DEMAND FOR JURY TRIAL

17
18               Plaintiffs hereby demand trial by jury of all claims and causes of
19   action in this lawsuit to the extent authorized by law.

20
21   Dated:   August 14, 2014                    DESAI LAW FIRM, P.C.

22
23                                    By: ____ /s/ *Aashish Y. Desai*
24                                        Aashish Y. Desai
                                          Attorneys for Plaintiffs
25
                                          Aashish Y. Desai
26                                        Bar No. 187394
                                          DESAI LAW FIRM, P.C.
27                                        Pacific Arts Plaza
                                          3200 Bristol Street, Ste. 650
28                                        Costa Mesa, CA 92626
                                          Tel.: (949) 614-5830

Fax: (949) 271-4190

Aashish Y. Desai
TX Bar No. 24045164
DESAI LAW FIRM, P.C
401 Congress Ave., Ste. 1540
Austin, TX 78701
Tel.: (512) 687-3455
Fax.: (512) 687-3499

Ross B. Brooks
N.Y. Bar No. 922122
Inayat Hemani
N.Y. Bar No. 031862012
SANFORD HEISLER, LLP
1350 Avenue of the Americas, 31st
Floor
New York, NY 10019
Tel.: (646) 402-5650
Fax: (646) 402-5651

H. Vincent McKnight
D.C. Bar No. 293811
John McKnight
Marissa Abraham
P.A. Bar No. 317055
SANFORD HEISLER, LLP
1666 Connecticut Avenue NW, Suite 300
Washington, D.C. 20009
Tel.: (202) 499-5200
Fax. (202) 499-5199